KIMBERLY A. SANCHEZ
Acting United States Attorney
ZULKAR KHAN
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-cr-00047-DC |
| Plaintiff, | **UNITED STATES'S OMNIBUS RESPONSE TO DEFENDANT'S POST-JUDGMENT MOTIONS TO VACATE CONVICTION** |
| v. | |
| PAUL KINGSTON, | |
| Defendant. | |

The United States, by and through its undersigned attorney, respectfully submits this omnibus response to the post-judgment motions filed by the defendant, Paul T. Kingston.  *See* ECF No. 53.

## I.      INTRODUCTION

On February 18, 2025, the defendant Paul T. Kingston filed three motions.  First, he filed a request ("Discovery Motion") to vacate his guilty verdict "on grounds that the untimely motion to compel discovery was mistakenly denied in full."  ECF No. 25.[1]  Second, the defendant filed a request ("Ineffective Assistance Motion") to vacate his guilty verdict "on the grounds that [his] counsel provided ineffective assistance" of counsel.  ECF No. 26.  Third, he filed a motion for leave to appeal *in forma pauperis* ("*In Forma Pauperis* Motion").  ECF No. 27.

Then, on April 25, 2025, the defendant filed another motion to vacate his conviction on multiple

---

[1] The same request is styled as a "motion to reconsider denial of discovery, vacate guilty verdict, and schedule hearing for new testimony."

grounds ("Motion to Vacate").  ECF No. 46.

The United States opposes the Discovery Motion, the Ineffective Assistance Motion, and the Motion to Vacate.  The United States takes no position as to the *In Forma Pauperis* Motion.

## II.    BACKGROUND

A. **Concerns about Fire Danger, Public Health and Sanitation Prompt Issuance of a Closure Order**

In June 2024, the Forest Service learned that a group—numbering in the hundreds and projected to reach thousands—had started camping in the Plumas National Forest without seeking special-use authorization as required for such large groups under 31 CFR § 261.10(k).  *See* ECF No. 11 at 13. Several factors caused concerns for the Forest Service: the unauthorized group's presence next to a road used for a busy logging operation, their digging of slit trenches for disposing of human waste, their decision to camp in a region at high risk of wildfire impact and at a site sacred to local tribes, and their trampling of pasture and diversion of water used by permitted livestock.  *Id.* at 13-14.

Concerned about the public health, safety, and environmental consequences arising from this mass gathering, the Forest Supervisor of the Forest issued an order (the "Closure Order") on June 25, 2024 prohibiting anyone from being in any portion of the Indian Creek Headwaters Closure Area (the "Closure Area") within the Forest.  *Id.* at 16. The Closure Order stated that it was in effect from June 26 through July 15, 2024.  *Id*.

B. **Forest Service Repeatedly Warns Unauthorized Group on Closure Order**

The Plumas National Forest website publicly published the closure order and an accompanying press release.  The Closure Order was also placed in the Forest Supervisor's office and the District Rangers' offices.  In addition, special information boards were erected to put the unauthorized group on notice, and physical printouts of the Closure Order were posted at every major road intersection leading to the unauthorized group's campsite.[2]

As testimony at trial uncovered, as a last measure, on the morning of July 4, 2024—more than a

---

[2] A detailed overview of the efforts undertaken by the Forest Service to provide notice for this Closure Order can be found in the United States's filings on this issue in *United States v. Mordchia*, Case No. 3:24-po-00186-DMC, ECF Nos. 20–27.

week after issuance of the Closure Osrder—Forest Service officers, including Officer Luke Dalton (who later cited this defendant), paid an in-person visit to unauthorized campers in the closed area, repeatedly verbally requesting them to leave or risk facing enforcement action.

The next day, on the afternoon of July 5, 2024, as Officer Dalton patrolled the closed area, he encountered an individual who identified himself as Paul T. Kingston. Officer Dalton issued him a citation for being in an area closed for the protection of public health or safety in violation of 36 C.F.R. § 261.53 and requested the defendant to leave the closed area.

Yet, two days later on July 7, as Officer Dalton was patrolling the closed area, he encountered the same individual. The individual again identified himself as Paul T. Kingston.  Officer Dalton subsequently issued him another citation for being in an area closed for the protection of public health or safety in violation of 36 C.F.R. § 261.53(e).

Prior to trial, the defendant filed a motion to compel a wide array of discovery.  ECF No.13 in Case No. 3:24-po-00181-DMC-1.[3]  His expansive discovery requests included, but were not limited, to the Forest Service's internal documents, operations protocols and certain materials dating back to 1972. The defendant insisted that these materials were necessary so he could substantiate a claim for selective enforcement.  On February 6, 2025, the Magistrate Judge issued an order denying his motion to compel discovery and his associated motion for a continuance.

At trial, the United States offered testimony from Officer Dalton and played body-camera footage showing the defendant within the closed area in Plumas National Forest.  The defendant took the stand, and admitted to being in the closed area on July 5 and July 7, 2024.

At the close of the bench trial, the Magistrate Judge found the defendant guilty of the citation dated July 7, 2024, but not guilty of the citation dated July 5, 2024.

### III.    <u>DISCOVERY MOTION (ECF NO. 25)</u>

Now the defendant seeks to vacate his guilty verdict on the grounds that the Magistrate Judge "mistakenly denied in full" a motion to compel discovery.  ECF No. 25 at 1.  Specifically, the defendant

---

[3] The instant appeal is of Case No. 3:24-po-00182-DMC which concerns the citation on July 7, 2024 whereas Case No. 3:24-po-00181-DMC concerns the citation on July 5, 2024.  The Magistrate Judge treated motions filed on one docket as filed on both, and would cite to 3:24-po-00181-DMC.  *See*, *e.g.*, ECF No. 18 at 2, n.1.

highlights three documents that he requested:

- Assessment of Need and Enforcement Plan
- Civil Rights Implication Analysis
- Order Checklist

*Id*.  The defendant cites to a Forest Service handbook for his contention that these documents should exist.

A court's ruling on a motion for discovery relating to a claim of selective enforcement or discriminatory prosecution is reviewed for an abuse of discretion.  *See United States v. Sellers*, 906 F.3d 848, 851 (2018); *United States v. Herrera-Perez*, No. 18-MJ-22672-BLM-CAB, 2025 WL 762701, at *1, n.1 (S.D. Cal. Mar. 11, 2025).

The defendant's extraordinary discovery request was denied for good reason.  Reasonable limitations on criminal discovery exist to prevent fishing expeditions.  *United States v. Sullivan*, No. CR 17-00104 JMS-KJM, 2019 WL 8301178, at *1 (D. Haw. Dec. 2, 2019).  The defendant simply had no basis for seeking documents so tangential to his citations.

The defendant's counsel, in the lower proceeding, appeared to have understood the obvious reality: the defendant's request for internal agency files was conventional scope of criminal discovery.  Months before a motion to compel was filed, the United States sought to understand on what legal basis the defendant sought these internal Forest Service documents.  Case No. 3:24-po-00181-DMC, ECF No. 19-1 at 1-2.  After all, his requests found no footing in the four foundations of discovery in federal criminal cases: Rule 16, *Giglio*, the Jencks Act, and *Brady*.  Eventually, the defendant's counsel girded his extraordinary request to a potential claim for selective prosecution or selective enforcement.

To establish a claim of selective prosecution, a defendant must show both discriminatory effect and discriminatory purpose.  *United States v. Sellers*, 906 F.3d 848, 852 (9th Cir. 2018) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).  A "rigorous standard" is applied for selective prosecution claims given the "presumption of regularly" afforded to prosecutors' "deliberate processes, which are covered by strong privileges."  *Id.* at 852-853.  When a defendant seeks discovery based on a selective prosecution claim, the standard is "nearly as rigorous as that for proving the claim itself." *Id.* at 852.  ("The standard for obtaining discovery in support of a selective prosecution claim is only slightly

lower than for proving the claim itself.") (quoting *United States v. Hare*, 820 F.3d 93, 99 (4th Cir. 2016)).

When a defendant seeks discovery based on a selective prosecution theory, the court must still scrutinize the "reliability and strength of the defendant's showing." *United States v. Babichenko*, No. 1:18-CR-00258-BLW, 2020 WL 6449164, at *3 (D. Idaho Nov. 3, 2020) (quoting *Sellers* at 855). While the standard for seeking discovery for a selective enforcement claim is lower than the standard for seeking discovery for a selective prosecution claim, the defendants must still have something more than mere speculation, and "what that something looks like will vary from case to case." *Sellers* at 855.2

Here, the defendant made no showing that Forest Service officers were motivated by discriminatory religious purpose when enforcing Forest Service rules and regulations against him and his fellow unauthorized campers in Plumas National Forest in the summer of 2024.  None of the defendant's exhibits were even relevant to the analysis of whether selective enforcement occurred.  As the Magistrate Judge pointed out,

> The closure orders Defendant included as exhibits show the area was closed to everyone, not just members of the Rainbow Gathering.  Defendant argues that the orders make unsubstantiated claims of unlawful activity, but this is factually inaccurate.  The 2023 Rainbow Gathering resulted in 121 citations.  Further, Defendant failed to show that similarly situated individuals were treated differently.

Case No. 3:24-po-00181-DMC, ECF No. 20 at 4. (citations omitted).  Ultimately, the Magistrate Judge concluded that the defendant failed to meet the "threshold requirements necessary to compel such an expansive discovery request to make a selective prosecution claim." *Id*. at 5.

Now, in asking this Court to reconsider the denial of his motion to compel, the defendant still does not address the crux of the problem of his expansive discovery request.  The defendant provides no data or evidence that others similarly situated persons were not cited or prosecuted.  He instead argues that his sought-after materials relate to due process, and thus if he received these materials, they would have "helped" to establish a systemic lack of due process.   ECF No. 25 at 2.

But the defendant still fails to assert a sufficient factual basis for making this burdensome discovery request for internal Forest Service files.  As this district court once emphasized, saying something is "helpful to the defense," means little in the context of Rule 16. *U.S. v. Salyer*, 271 F.R.D.

148, 157 (E.D. Cal. 2010).  The defendant's conclusory statement that his request is "material" to his defense remains equally lacking.  *See U.S. v. Mandel*, 914 F. 2d 1215, 1219 (9th Cir. 1990) ("Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to defense.").

Thus, the defendant's request to have his motion to compel reconsidered merits denial.[4]

### IV.    INEFFECTIVE ASSISTANCE MOTION (ECF NO. 26)

The defendant also seeks to vacate his guilty verdict on the grounds that his counsel provided ineffective assistance.  Specifically, he alleges that certain constitutional and procedural arguments he proposed to his counsel in seeking discovery were not raised by his counsel.  More tangibly, the defendant appears to complain that the discovery motion should have been filed earlier, and his counsel should have more forthrightly asserted to the Closure Order's legality.

To establish ineffective assistance by his trial counsel, a petitioner must demonstrate both that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 688-93 (1984).

The defendant's motion mischaracterizes the scope of his constitutional rights and his counsel's professional responsibilities. While the Sixth Amendment guarantees a defendant the right to determine the ultimate objective of his defense—such as whether to plead guilty or maintain innocence—it does not entitle him to dictate legal strategy or to repurpose his criminal prosecution for political or ideological ends.

In the case relied heavily by the defendant, *McCoy v. Louisiana*, 584 U.S. 414, 426-427 (2018), the Supreme Court emphasized that a defendant has the sole authority to decide to maintain innocence, even against counsel's advice.  But *McCoy* is inapposite here.  The core holding in *McCoy* concerned a capital defendant's absolute right to contest guilt.  By contrast, the defendant here does not allege that

---

[4] The defendant also cursorily added several requests to his motion for reconsideration.  ECF No. 25 at 2.  He sought a hearing for a motion for him to proceed *in forma pauperis* (on which the United States takes no position), appointment of counsel (which this Court has denied, ECF No. 53), and a hearing to hear new testimony and a new judgment (which the United States opposes for a lack of factual and legal bases).

his attorney conceded guilt against his wishes; rather, he objects to counsel's refusal to pursue a broad constitutional challenge to a Forest Service closure order that he viewed as politically significant. The Supreme Court has never recognized a defendant's right to use a petty offense proceeding as a vehicle to litigate generalized grievances against government policy.

Moreover, courts have consistently held that "[t]actical decisions, such as whether to raise particular arguments or pursue certain motions, are properly entrusted to defense counsel." *Florida v. Nixon*, 543 U.S. 175, 187 (2004); *see also Taylor v. Illinois,* 484 U.S. 400, 417-18 (holding that an attorney has authority to manage most aspects of the defense without obtaining their client's approval); *United States v. Thomas*, 417 F.3d 1053, 1056-59 (9th Cir. 2005) (holding that strategic decisions about which defenses to pursue lie within the realm of counsel's professional judgment). Here, the defendant's counsel appropriately exercised professional discretion in declining to pursue certain meritless challenges, particularly given the limited scope and nature of the misdemeanor prosecution.

Even if Defendant's claim were cognizable under *Strickland*, he cannot satisfy either prong. There is no showing that counsel's performance fell below an objective standard of reasonableness, nor that any alleged deficiency prejudiced the outcome. Defendant concedes as much, admitting that "an effort to demonstrate prejudice would be fruitless." ECF No. 26 at 6. He, in fact, credits his counsel for successfully obtaining a dismissal for one of his citations. *Id*. These concessions alone are fatal to his claim.

Nor could the defendant make a colorable claim of prejudice here. Fortunately, instead of thinking hypothetically about whether the outcome would have been different had the defendant's counsel more forthrightly challenged the Closure Order itself, the defendant now has the benefit of that alternative scenario having been played out in this district, to no avail. *See United States v. Mordchia*, Case No. 3:24-po-00186-DMC, ECF No. 17. In that other case, where a fellow unauthorized camper was cited for violating the exact same Closure Order as this defendant, the camper's counsel—same as this defendant's—forthrightly challenged the posting and notice requirements of the Closure Order itself, essentially arguing that all citations issued on its basis were invalid. *Id*. The Magistrate Judge— same as the one who presided over this defendant—carefully considered the arguments, ordering additional briefing, before ultimately finding that camper guilty of violating the Closure Order. *Id*., ECF

Nos. 19, 37.  Had this defendant's counsel tried some of his creative ideas in his case, the record suggests that his outcome would have been no better.

Accordingly, this motion should be denied.

## V.       *IN FORMA PAUPERIS* MOTION (ECF NO. 27)

The United States takes no position on the defendant's request to proceed *in forma pauperis*. Nevertheless, to aid the Court, the United States provides two relevant guidelines when considering such a request.

First, in a typical appeal—from a district court to a court of appeals—a petition seeking to proceed *in forma pauperis* must first "show in detail" the petitioner's inability to pay or give security for fees.  Fed. R. App. P. 24(a)(1).  That requirement is met by the petitioner completing Form 4 of the Appendix of Forms provided by the Federal Rules of Appellate Procedure.  Failure to provide sufficient details merits a denial of the request.  *See, e.g., Briggs v. Pain Care Specialists of Oregon,* No. 3:25-cv-05095-DGE, 2025 WL 1382904, at *1 (W.D. Wash. Apr. 28, 2025).  Given that the Federal Rules of Appellate Procedure govern this appeal, the same relevant standard should apply here.  *See* Fed. R. Crim. P. 58(g)(1).

Second, the petitioner must also show that the issue he is seeking review of is non-frivolous. Legally frivolous appeals are those based on "indisputably meritless theory," while factually frivolous ones are those premised on "clearly baseless" factual contentions.  *Sanders v. Fitness Int'l LLC*, No. 23-cv-00481-PHX-MTL, 2024 WL 945132, at *1 (D. Ariz. Feb. 7, 2024).

## VI.       MOTION TO VACATE (ECF NO. 46).

The defendant also seeks to vacate his conviction on grounds that the Closure Order was unlawful.  This motion repeats several discovery-related arguments he made in his other motions (and addressed above), but he makes two arguments not squarely addressed earlier.  He first contends that there is a lack of evidence that a copy of the Closure Order was posted in the Forest Supervisor's office, as required by 36 C.F.R. 261.51.  ECF No. 46 at 6-7.  Second, the defendant argues that the Forest Service failed to follow certain procedures provided for in an internal agency handbook.

The argument that Closure Order's posting violated 36 C.F.R. 261.51 fails for two reasons. First, neither the defendant nor his counsel timely raised these contentions against the posting of the

Closure Order, thereby waiving them.  Second, even when the posting issue was timely raised by one of this defendant's fellow campers, the record quickly revealed that all requirements of 36 C.F.R. 261.51 were met.  Not only did the United States submit proof that the Forest Service placed copies at the Forest Supervisor's office and the District Ranger's offices on June 26, 2024, the record revealed that the Forest Service expended robust efforts to provide sufficient notice of the Closure Order to the unauthorized campers before undertaking even the mildest type of enforcement action.  *See United States v. Mordchia*, Case No. 3:24-po-00186-DMC, ECF Nos. 20–27.[5]

The arguments that the Forest Service, in issuing the Closure Order, did not follow its internal guidelines fail as a matter of law.  Even if some Forest Service handbook mandates internal documentation (e.g., an "Assessment of Need and Enforcement Plan"), such administrative manuals do not carry the "force of law" absent formal rulemaking.  As the Ninth Circuit has made clear, agency manuals and handbooks are not judicially enforceable unless promulgated pursuant to statutory authority and with procedural compliance.  *See United States v. Fifty-Three Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982).  The Ninth Circuit has noted that for an individual defendant to raise a defense based on an agency policy, it must meet a two-prong test:  first, the policy must be "legislative in nature" and, second, it must be "promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress."  *Id*.

At most, the internal documents that the defendant references are a set of internal operating procedures and guidance for agency personnel—not legislative rules with the force of law.  There is no evidence that they were issued through a notice-and-comment rulemaking process, or that they themselves set out due process requirements for individual defendants.  The defendant does not identify any statutory authority requiring strict compliance with their contents.

Moreover, courts have consistently recognized that internal manuals and handbooks serve as non-binding administrative tools, not as enforceable legal mandates.  *See, e.g., Rank v. Nimmo*, F.2d 692, 698 (9th Cir. 1982).  While an agency document may use language like "shall" or "must," such

[5] *U.S. v. Mordchia* was a case sharing similar factual circumstances as this defendant's case as partly reflected by this defendant's counsel's attempt to combine pre-trial matters for both cases on the same date.  *See* Case No. 3:24-po-00181-DMC, ECF No. 8 at 3; Case No. 3:24-po-00181-DMC, ECF No. 19-2 at 1.

phrasing does not transform internal agency guidance into law.  The relevant binding authority here is 36 C.F.R. § 261.50, which governs the issuance of Forest Service orders.  To elevate any internal policy handbook to the level of enforceable federal regulation would contravene *Eclectus Parrots*.  Because the defendant has failed to show that the documents he references have the force of law, any alleged deviation from their terms do not establish a due process violation or invalidate the facial lawfulness of the closure order.

## VII.    CONCLUSION

For the aforementioned reasons, the Court should deny the defendant's motions to vacate his conviction.

DATED:  July 31, 2025                              Respectfully submitted,

                                                            KIMBERLY A. SANCHEZ
                                                            Acting United States Attorney


                                                            /s/ *Zulkar Khan*
                                                            ZULKAR KHAN
                                                            Assistant U.S. Attorney