ERIC GRANT
United States Attorney
ZULKAR KHAN
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:25-cr-00047-DC |
| Appellee, | ) | **UNITED STATES'S APPELLEE ANSWERING BRIEF** |
| v. | ) | |
| PAUL KINGSTON, | ) | |
| Appellant. | ) | |
| | ) | |

The United States, by and through its undersigned attorney, respectfully submits this answering brief to the appellant's brief filed by the defendant, Paul T. Kingston. *See* ECF No. 57.

## I.  BACKGROUND

### A. Concerns about Fire Danger, Public Health and Sanitation Prompt Issuance of a Closure Order

In June 2024, the Forest Service learned that a group—numbering in the hundreds and projected to reach thousands—had started camping in the Plumas National Forest without seeking special-use authorization as required for such large groups under 31 CFR § 261.10(k). *See* ECF No. 11 at 13. Several factors caused concerns for the Forest Service: the unauthorized group's presence next to a road used for a busy logging operation, their digging of slit trenches for disposing of human waste, their decision to camp in a region at high risk of wildfire impact and at a site sacred to local tribes, and their trampling of pasture and diversion of water used by permitted livestock. *Id.* at 13-14.

Concerned about the public health, safety, and environmental consequences arising from this mass gathering, the Forest Supervisor of the Forest issued an order (the "Closure Order") on June 25, 2024 prohibiting anyone from being in any portion of the Indian Creek Headwaters Closure Area (the "Closure Area") within the Forest. *Id.* at 16. The Closure Order stated that it was in effect from June 26 through July 15, 2024. *Id*.

**B. Forest Service Repeatedly Warn Unauthorized Group on Closure Order**

The Plumas National Forest website publicly published the closure order and an accompanying press release. The closure order was also placed in the Forest Supervisor's office and the District Rangers' offices. In addition, special information boards were erected to put the unauthorized group on notice, and physical printouts of the closure order were posted at every major road intersection leading to the unauthorized group's campsite.[1]

As testimony at trial uncovered, as a last measure, on the morning of July 4, 2024—more than a week after issuance of the closure order—Forest Service officers, including Officer Luke Dalton (who later cited this defendant), paid an in-person visit to unauthorized campers in the closed area, repeatedly verbally requesting them to leave or risk facing enforcement action.

The next day, on the afternoon of July 5, 2024, as Officer Dalton patrolled the closed area, he encountered an individual who identified himself as Paul T. Kingston. Officer Dalton issued him a citation for being in an area closed for the protection of public health or safety in violation of 36 C.F.R. § 261.53 and requested the defendant to leave the closed area.

Yet, two days later on July 7, as Officer Dalton was patrolling the closed area, he encountered the same individual. The individual again identified himself as Paul T. Kingston. Officer Dalton subsequently issued him another citation for being in an area closed for the protection of public health or safety in violation of 36 C.F.R. § 261.53(e).

At trial, the United States offered testimony from Officer Dalton and played body-camera footage showing the defendant within the closed area in Plumas National Forest. The defendant took the

[1] A detailed overview of the efforts undertaken by the Forest Service to provide notice for this Closure Order can be found in the United States's filings on this issue in *United States v. Mordchia*, Case No. 3:24-po-00186-DMC, ECF Nos. 20–27.

stand, and admitted to being in the closed area on July 5 and July 7, 2024.

At the close of the bench trial, the Magistrate Judge found the defendant guilty of the citation dated July 7, 2024, but not guilty for the citation dated July 5, 2024.

## II.    STANDARD OF REVIEW

This Court has jurisdiction over this appeal following a bench trial conviction by a magistrate judge.  18 U.S.C. § 3402.  In reviewing this conviction, this Court sits as an appellate court, applying the same standards as a court of appeals.  A district court reviews a magistrate's factual findings for clear error and legal conclusions *de novo.  See Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986). Mixed questions of law and fact are subject to *de novo* review; however, the factual findings that underlie the application of the law are reviewed for clear error. *Id*.; *United States v. Prieto–Villa*, 910 F.2d 601, 604 (9th Cir. 1990).  This Court's review is limited to the issues and evidence presented in the proceedings below. *See, e.g., United States v. Greger*, 716 F.2d 1275, 1277 (9th Cir. 1983).

## III.    SUMMARY OF ARGUMENTS

The defendant's conviction should be affirmed because his legal challenges to the Closure Order are meritless.  First, the Closure Order, promulgated for public health and safety concerns, did not violate his free exercise of religion or any First Amendment right to religious assembly.  The Closure Order was a content-neutral rule of general applicability aimed at protecting public safety on the Forest, not at suppressing religion.  It did not target any religious practice, and the defendant has failed to demonstrate that it posed a substantial burden on any sincerely held religious belief.  Indeed, under controlling law, a neutral and temporary land closure for safety reasons does not infringe the Free Exercise Clause.  Even if analyzed under the Religious Freedom Restoration Act of 1993 ("RFRA"), the defendant's claim fails because the Closure Order served a compelling government interest—preventing wildfires, disease, etc.—and was the least restrictive means to achieve that interest given the circumstances.

Second, the Closure Order did not violate the defendant's First Amendment rights to free speech, peaceable assembly, or expressive association.  The Order was content-neutral, and made limited and reasonable time, place, and manner-restrictions, leaving ample alternatives.

Third, even putting aside the defendant's failure to raise his APA arguments before the

magistrate judge, the Forest Service acted squarely within its statutory authority. Procedural requirements were satisfied, and the defendant's invocation of internal handbooks are misplaced in this criminal context.

For these reasons, further detailed below, this Court should affirm the defendant's conviction.

## IV.    ARGUMENTS[2]

### A.    The Closure Order Did Not Violate Free Exercise, RFRA, or the RLUIPA

Neutral, generally applicable rules that incidentally burden religion do not violate the Free Exercise Clause. *See Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990) ("We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate . . . [T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability) (cleaned up). The Supreme Court has made clear that restricting access to a preferred site, without coercion of belief, is not a constitutional burden. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988). This circuit's case law is also illuminating on this point. For example, in a case where the Rainbow Family refused to seek authorization before camping in the national forests, the Ninth Circuit flatly rejected the group's argument that a Forest Service regulation even if "ostensibly-content neutral . . . was in fact intended to target the Rainbow Family and to stifle its message." *Black v. Arthur*, 201 F.3d 1120, 1123 (9th Cir. 2000). The Ninth Circuit affirmed its previous holding and explained that "even if the Forest Service had specific experiences in mind when it adopted the challenged regulation, the appropriate level of scrutiny is tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content." *Id.*

Here, the Closure Order applied to everyone, regardless of belief or purpose. Its justification—based on wildfire, sanitation, and safety risks—was wholly unrelated to religion. ECF No. 11 at 13-14. The defendant never showed that camping in the specific area subject to the Closure Order was itself a religious exercise or that denial of access coerced him in any way on his faith.

---

[2] Given how the defendant's contentions previously made in his various motions to vacate his conviction are repeated in his appellant brief, the United States incorporates herein its Omnibus Response, ECF No. 54.

The defendant's RFRA claim, which the defendant waived by bringing it now for the first time, fares no better.  To succeed on a RFRA defense, a claimant must first make two showings: (1) governmental action burdens a sincere exercise of religion and (2) the burden is "substantial." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1067-68 (9th Cir. 2008).

Here, *assuming arguendo*, that the unauthorized gathering's camping constituted a "sincere exercise of religion," no substantial burden existed.  The adherence to the Closure Order would mean that the unauthorized campers relocate to a different part of the Forest—an inconvenience that falls well short of compulsion on religion.  The Order did not prohibit religious exercise or force the defendant to act contrary to his beliefs.

Finally, the defendant's reliance on the Religious Land Use and Institutionalized Persons Act ("RLUIPA") is fundamentally misplaced.[3]  Courts have rejected attempts to apply RLUIPA outside of limited contexts pertaining to land use regulation by state or local governments.  *Navajo Nation* at 1077 (9th Cir. 2008) ("RLUIPA does not apply to a federal government action").

**B.    <u>The Closure Order Did Not Violate Free Speech or Expressive Assembly</u>**

The First Amendment protects speech and assembly in traditional public forums like national forests, but that protection is not absolute. The government may impose reasonable time, place, and manner restrictions that are content-neutral, narrowly tailored to serve significant interests, and leave open ample alternative channels for communication.  *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

The Closure Order satisfied all three requirements.  ECF No. 11 at 16-17.  It was content-neutral: its term applied to all persons, regardless of viewpoint, message, or expressive activity. The Order made no reference to speech or assembly and was justified exclusively by public health, safety, and environmental concerns.  Its neutrality of purpose is underscored by the fact that it would have applied equally to any large group—whether religious pilgrims, political demonstrators or recreational campers—who chose to occupy that vulnerable site without authorization.

The Closure Order was also narrowly tailored.  The government's interests in wildfire

---

[3] The defendant cites the "Protection of Religious Exercise in Land Use and by Institutionalized Persons Act", ECF No. 57 at 14, but presumably means RLUIPA.

prevention, sanitation, and public safety are unquestionably significant.  *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989) (noting that it cannot be undoubted that the government has a "substantial interest" in protecting citizens from excessive noise).  The restriction was limited both geographically and temporally: a three-week closure of a single high-risk area.  ECF No. 11 at 16-17.  The Forest Service did not impose a blanket ban on gatherings in the Plumas National Forest, nor did it bar expressive activities altogether.  Notably, narrowly tailoring does not require the government to adopt the least restrictive means imaginable; it requires that the chosen regulation simply not burden substantially more speech than necessary.  *Id*. at 796-801.

Finally, Closure Order left ample alternative channels for expression and assemble. The unauthorized campers were free to assemble and communicate on other national forest lands, including within the Plumas National Forest.

The defendant cites an inapposite Supreme Court case, *Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994).  *Madsen* dealt with restrictions specifically aimed at abortion protesters.  For example, the order targeting abortion protesters in *Madsen* included provisions implementing a buffer zone around clinic entrances, a prohibition on excessive noise (to prevent disruption of medical procedures), and restrictions on displaying images observable from inside the clinic.  *Id.* at 759-761.

By contrast, the Closure Order here was a generally applicable regulation of land use.  It applied to all persons in a geographic area regardless of identity, message, or activity.  Thus, the stricter framework of *Madsen* simply does not apply here.

### C.    The Closure Order Was Lawful Under the APA

For the first time, the defendant invokes 5 U.S.C. § 706(a), (b), (d), and (f), but none support relief.[4]  Congress has delegated to the Forest Service, through the Secretary of Agriculture, the authority to make "rules and regulations" to "regulate [the] occupancy and use" of national forests. 16 U.S.C. § 551; *California Coastal Comm'n v. Granite Rock Co.,* 480 U.S. 572, 582 (1987).  Pursuant to that delegation, Forest Supervisors are expressly empowered to issue area closures for the "protection of

---

[4] As with several of his arguments, the defendant waived this line of arguments by failing to raise it earlier before the magistrate judge and bringing it before this Court for the first time on appeal.  *See Animal Protection Institute of America v. Hodel*, 860 F.2d 920, 927 (9th Cir. 1988) (failure to raise issue below bars consideration on appeal).

public health or safety."  36 C.F.R. §§ 261.50(b), 261.53(e).  This Closure Order tracked this authority precisely by closing the Indian Creek Headwaters area for a limited duration to mitigate documented safety and environmental concerns.

The Closure Order was neither arbitrary nor capricious—in fact, it was necessary given the information known to the Forest Supervisor.  Officials documented fire hazards, unsafe traffic conditions, health threats from waste disposal, and damage to grazing and cultural sites.  ECF No. 11 at 13-15.  The Forest Supervisor had to act, and after thorough deliberation, he promulgated the Closure Order.

Agency action is "arbitrary and capricious" where the agency completely ignored an important aspect of the problem, or gave an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  *See Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Here, the Forest Supervisor carefully documented the reasons for issuing the Closure Order and, in issuing the Closure Order, he acted squarely in response to evidence of imminent danger.  ECF No. 11 at 13-15.  A temporary closure directly furthered the statutory goal of protecting forest lands and public safety.

Because the Closure Order was neutral and reasonable, it was not "contrary to constitutional right" under §706(2)(B).  Nor was it "unwarranted by the facts" under § 706(2)(F).  Nor was there a failure to "observance of procedure required by law" under §706(2)(D).

Taken altogether, the APA provides no basis to disturb the Order.  The defendant's challenge essentially arguments previously made.  The Closure Order was authorized and rationally based on record evidence.

///

///

///

///

///

///

## V.    CONCLUSION

The Closure Order was promulgated within the Forest Service's statutory authority, complied with applicable procedures, and was well supported by the facts.  It did not infringe on any rights conferred by the First Amendment or any statutes.  The defendant defied a lawful order and was justly convicted.  His appeal should be denied, and his conviction affirmed.

DATED:  September 12, 2025                     Respectfully submitted,

                                              ERIC GRANT
                                              United States Attorney


                                              /s/ *Zulkar Khan*
                                              ZULKAR KHAN
                                              Assistant U.S. Attorney